UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WALTER LEE, | ) | |
| | ) | |
| Plaintiff, | ) | No. 07 C 2035 |
| | ) | |
| vs. | ) | Judge Lindberg |
| | ) | Magistrate Judge Keys |
| THE CITY OF CHICAGO, | ) | |
| A Municipal Corporation, and | ) | |
| Chicago Police Officers | ) | |
| CHRIST SAVICKAS, Star 5991, | ) | Jury Demand |
| ROBERT STEGMILLER, Star 18764, | ) | |
| SEAN BRANDON, Star 18866, | ) | |
| ISAAC LEE JR, Star 10353, | ) | |
| COURTNEY HILL, Star 12283, | ) | |
| TERRENCE MORRIS, Star 16465, | ) | |
| CORNELIUS BROWN, Star 2235, | ) | |
| LEVI ROBERTS, Star 12313, | ) | |
| WILLIAM LAMAR, Star 9865, | ) | |
| DENNIS HINES SR, Star 4086, and | ) | |
| ANDREW SCHOEFF, Star 1249, | ) | |
| | ) | |
| Defendants. | ) | |

**THIRD AMENDED COMPLAINT**

1.  This is an action for money damages brought pursuant to 42 U.S.C. § 1983, and the Fourth and Fourteenth Amendments to the United States Constitution.

2.  Jurisdiction for Plaintiff's federal claims is based on 28 U.S.C. §§ 1331 and 1343(a). Jurisdiction for Plaintiff's state claims is based on supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

3.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), in that the claims arose in this district as alleged below.

**Parties**

4.  Plaintiff is a citizen of the United States, and a resident of the City of Chicago.

5.  Plaintiff is a musician who plays guitar. At the time of the incident, Plaintiff was 40 years-old, and had never been arrested in his life.

6.  Defendant police officers are duly appointed and sworn City of Chicago police

officers. At all times material to this Complaint, the Defendant-Officers were acting in the course and scope of their employment, and under color of state law, ordinance and/or regulation.

7. The Defendant-Officers are sued in their individual capacities.

8. The CITY OF CHICAGO is a municipal corporation, duly incorporated under the laws of the State of Illinois, and is the employer and principal of the Defendant-Officers.

**Facts**

9. On or about January 10, 2007, at about 8:00 p.m., Plaintiff was at his home located at 3833 South King Drive, Apartment 392, in the City of Chicago. Plaintiff has lived at that address for 33 years.

10. Also at the home at that time was his sister, Tycmeko Lee, who has also lived at that address for 33 years.

11. While in his home, Plaintiff heard repeated banging and kicking of both the front and the back door of his home.

12. Plaintiff and his sister called 911. Plaintiff called from his home phone, and his sister called from her mobile phone.

13. Plaintiff became frightened by the banging and kicking, and got his gun.

14. Plaintiff retrieved a .38 revolver, a gun that he had purchased in about 1994 for his job as a security guard. The gun had been registered until about 2001 when Plaintiff stopped working as a security guard.

15. Later, Plaintiff heard the persons who had been banging on his doors say "police."

16. After hearing that, Plaintiff put his gun on his bed in his bedroom, and went to open the door for the police.

17. When Plaintiff started to open the door, Defendant-Officers forcibly pushed the door in.

18. After entering, Defendant-Officers told Plaintiff that he was not supposed to be there (in his home).

19. Plaintiff told the Defendant-Officers that he had lived there for 33 years.

20. Defendant-Officers did not have a search warrant, probable cause, exigent circumstances, or any other legal justification to enter Plaintiff's home.

21. Plaintiff was seized.

22. Plaintiff had not violated any city, state or federal law. Defendant-Officers did not

have any reason to believe that Plaintiff had violated, or was about to violate, any city, state or federal law. Defendant-Officers did not have an arrest warrant, probable cause, reasonable suspicion, consent, or any other lawful basis to stop, detain, or seize Plaintiff.

23. Defendants SAVICKAS, STEGMILLER, BRANDON, LEE JR, HILL, MORRIS, and BROWN were in Plaintiff's home.

24. Some Defendant-Officers were in Plaintiff's kitchen, others were in Plaintiff's living room.

25. The officers were all males, all in plainclothes, some where white, some were black.

26. Defendant-Officers asked Plaintiff if he was using drugs.

27. Plaintiff told the officers that he does not use drugs.

28. Defendant-Officers then grabbed Plaintiff and searched his person.

29. During the course of their search of Plaintiff, the Defendant-Officers did not find any weapons, narcotics, or evidence of any illegal activity.

30. Defendant-Officers asked Plaintiff if he had identification.

31. Plaintiff went to get his identification from his bedroom.

32. Defendant-Officers started looking around Plaintiff's home, and one Defendant-Officer removed a flashlight from Plaintiff's living room table and put it in his pocket.

33. Other Defendant-Officers followed Plaintiff into his bedroom, and saw the gun on Plaintiff's bed.

34. Defendant-Officers asked Plaintiff about the gun.

35. Plaintiff explained that he had obtained the gun through his work as a security officer.

36. Defendant-Officers continued to search Plaintiff's home, including inside all of his guitar cases.

37. Defendant-Officers did not have a search warrant, probable cause, exigent circumstances, or any other legal justification to search Plaintiff's home.

38. Nothing was found as a result of the search.

39. Defendant-Officers told Plaintiff that they had to take him to the station, and that he would not be gone very long.

40. Plaintiff asked if he could take his coat. Defendant-Officers told Plaintiff that he

could not take his coat.

41. Plaintiff asked again if he could take his coat, and finally he was allowed to get it.

42. On the way to the police station, Defendants HILL and BROWN observed a police car with its emergency lights activated, and they followed that car to see what was going on. As it turned out, that car was only going to Chicago police headquarters at 35th and Michigan, and there was no emergency.

43. After being finally taken to the station, Plaintiff was processed and placed in the lock-up.

44. Defendant SCHOEFF was the desk sergeant and assisted Defendants HINES, ROBERTS and LAMAR in bonding detainees out of the lock-up.

45. Defendant HINES wrote up an I-bond for Plaintiff.

46. Defendants ROBERTS and LAMAR went to the lock-up to get Plaintiff.

47. Percy Blake claimed to be Plaintiff and Defendants HINES, ROBERTS, LARMAR, and SCHOEFF authorized the release of Mr. Blake from the station. Mr. Blake was given Plaintiff's wallet and keys.

48. Later, a Defendant-Officer came to Plaintiff's cell and asked Plaintiff if he had any credit cards in his wallet.

49. Later, another officer asked Plaintiff if he had any keys when he came to the station.

50. Plaintiff was also asked if had any money in his wallet.

51. Finally, an officer explained that when the police were looking for Plaintiff to release him, a detainee had (falsely) claimed that he was Plaintiff. That other person who falsely asserted he was Walter Lee was released by the Chicago Police Department.

52. Officers asked Plaintiff if he knew the guy who they released under Plaintiff's name. Plaintiff told them that he did not. The person who the police released did not even look like Plaintiff. Nonetheless, that person used Plaintiff's identification to walk out of the Chicago police station. Officers told Plaintiff that the other person stole Plaintiff's belongings, including his wallet.

53. Plaintiff asked if he could be released. Officers told Plaintiff that he has to stay in jail since he was involved in the escape of the other person.

54. A white-shirt officer offered Plaintiff $20 to keep quiet about what happened.

4

Plaintiff did not take the money.

55. Plaintiff was eventually charged with possession of a firearm without registration.

56. Because the police released the wrong person under Plaintiff's name, Plaintiff was not allowed to be released that night as he normally would have been. Instead, Plaintiff was held for 3 days, until he appeared in court on January 12, 2007.

57. The charges against Plaintiff were dismissed.

58. After Plaintiff was released, he was unable to drive his truck as he had no keys.

59. Each individual Defendant-Officer acted willfully, wantonly, maliciously, oppressively, and with a conscious disregard and deliberate indifference to Plaintiff's rights.

60. Each individual Defendant-Officer personally participated in the unlawful conduct, and acted jointly and in concert with the other Defendants who participated or acquiesced in the unlawful conduct.

61. As a direct and proximate result of the acts of the Defendants described above, Plaintiff has suffered and continues to suffer damages including attorney's fees, loss of physical liberty, emotional distress, pain and suffering, and other damages.

## COUNT I
### (42 U.S.C. § 1983 – Unreasonable Seizure)

62. Plaintiff realleges paragraphs 1 through 61 as if fully set forth herein.

63. After Defendants SAVICKAS, STEGMILLER, BRANDON, LEE JR, HILL, MORRIS, and BROWN entered Plaintiff's home, he was seized.

64. Said Defendants did not have an arrest warrant, probable cause, reasonable suspicion, consent, or any other lawful basis to stop or seize Plaintiff.

65. The actions of said Defendants in seizing Plaintiff without any legal justification, violated his Fourth Amendment right, as guaranteed by the Fourteenth Amendment, to be free from unreasonable seizures.

WHEREFORE, Plaintiff asks that this Honorable Court:

a) Enter judgment against said Defendants;

b) Award Plaintiff compensatory and punitive damages, as determined at trial;

c) Award Plaintiff attorneys' fees and costs;

d) Award such other and additional relief that this Honorable Court deems just and

equitable.

## COUNT II
### (42 U.S.C. § 1983 – Illegal Search of Person)

66. Plaintiff realleges paragraphs 1 through 61 as if fully set forth herein.

67. The actions of Defendant-Officers in searching Plaintiff's person without any legal justification or probable cause violated his Fourth Amendment right, as guaranteed by the Fourteenth Amendment, to be free from unreasonable searches.

WHEREFORE, Plaintiff asks that this Honorable Court:

a) Enter judgment against Defendant-Officers;

b) Award Plaintiff compensatory and punitive damages, as determined at trial;

c) Award Plaintiff attorneys' fees and costs;

d) Award such other and additional relief that this Honorable Court deems just and equitable.

## COUNT III
### (42 U.S.C. § 1983 – Illegal Search of Home)

68. Plaintiff realleges paragraphs 1 through 61 as if fully set forth herein.

69. Defendants SAVICKAS, STEGMILLER, BRANDON, LEE JR, HILL, MORRIS, and BROWN did not have a search warrant, probable cause, exigent circumstances, or any other legal justification to search Plaintiff's home.

70. The actions of said Defendants in searching Plaintiff's home without any legal justification violated his Fourth Amendment right, as guaranteed by the Fourteenth Amendment, to be free from unreasonable searches.

WHEREFORE, Plaintiff asks that this Honorable Court:

a) Enter judgment against said Defendants;

b) Award Plaintiff compensatory and punitive damages, as determined at trial;

c) Award Plaintiff attorneys' fees and costs;

d) Award such other and additional relief that this Honorable Court deems just and equitable.

## COUNT IV
## (42 U.S.C. § 1983 – *Monell* Claim against the CITY OF CHICAGO)

71. Plaintiff realleges all of the above paragraphs and counts, as if fully set forth herein.

72. At all times material to this Complaint, there existed in the city of Chicago the following practices, policies and customs:

    a. stopping, detaining, arresting, and searching CHA residents without a warrant, probable cause, reasonable suspicion, consent, or any other legal basis;

    b. searching CHA residents' homes without a warrant, probable cause, reasonable suspicion, consent, or any other legal basis;

    c. failure to adequately train, supervise and discipline police officers in the categories and fields of police work addressed above;

    d. failure to adequately investigate citizen complaints against police officers;

    e. failure to adequately discipline police officers for misconduct;

    f. through the Office of Professional Standards (OPS), conducting inadequate and deficient investigations of citizen complaints of police misconduct in which an officer is rarely disciplined, thereby encouraging even more police misconduct;

73. The actions of the Defendant-Officers as alleged in this Complaint were done pursuant to, and as a result of, one or more of the above *de facto* practices, policies and customs of the CITY OF CHICAGO, the Chicago Police Department, and its police officers.

74. One or more of the following entities, authorities and officials are responsible for the policies, practices and customs alleged above: the Mayor of Chicago, the City Council, the aldermen, the Chicago Police Department, the Chicago Police Board (to which the CITY OF CHICAGO has delegated *de jure* final policy-making authority for the Chicago Police Department); the members of the Chicago Police Board, the Office of Professional Standards, and Superintendent Phil Cline (to whom the CITY OF CHICAGO has delegated *de facto* final policy-making authority for the Chicago Police Department regarding the matters complained of herein).

75. The practices, policies and customs described above are widespread, permanent and well-settled, and were known, or should have been known, to the municipal policy-makers of

the CITY OF CHICAGO.

76. The municipal policy-makers of the CITY OF CHICAGO acted with deliberate indifference to the rights of Plaintiffs in maintaining, overlooking and preserving the unconstitutional practices, policies and customs delineated above.

77. By their inaction and failure to correct the above-described practices, policies and customs, municipal policy-makers tacitly approve and thus indirectly authorize the type of misconduct Plaintiff complains of herein.

WHEREFORE, Plaintiff asks that this Honorable Court:

a) Enter judgment against the CITY OF CHICAGO;

b) Award Plaintiff compensatory damages, as determined at trial;

c) Award Plaintiff attorneys' fees and costs;

d) Award such other and additional relief that this Honorable Court deems just and equitable.

## COUNT V
### (42 U.S.C. § 1983 – Due Process)

78. Plaintiff realleges paragraphs 1 through 61 as if fully set forth herein.

79. Defendants ROBERTS, LAMAR, HINES SR, and SCHOEFF held Plaintiff after he was to be bonded out of the lock-up.

80. Releasing the wrong person when Plaintiff should have been released violated his right to due process.

WHEREFORE, Plaintiff asks that this Honorable Court:

a) Enter judgment against Defendant-Officers,

b) Award compensatory and punitive damages, as determined at trial,

c) Award attorneys' fees and costs, and

d) Award any further relief that this Honorable Court deems just and equitable.

## COUNT VI
### (State Law Claim for Willful and Wanton Conduct)

81. Plaintiff realleges paragraphs 1 through 61 as if fully set forth herein.

82. Defendants ROBERTS, LAMAR, HINES SR, and SCHOEFF had a duty to Plaintiff to release him at the proper time, and not continue the detention of Plaintiff and delay his release because the Chicago Police Department released a person who falsely claimed to be Walter Lee.

83. Said Defendants breached that duty.

84. Said Defendants released a person who falsely claimed that he was Plaintiff when the officers were looking for Plaintiff to release him.

WHEREFORE, Plaintiff asks that this Honorable Court:

a) Enter judgment against said Defendants;

b) Award Plaintiff compensatory and punitive damages, as determined at trial;

c) Award Plaintiff costs;

d) Award such other and additional relief that this Honorable Court deems just and equitable.

## COUNT VII
### (State Law *Respondeat Superior* Claim)

85. The acts of the individual Defendant-Officers described in the supplementary state claim specified above was willful and wanton, and committed in the scope of employment.

86. Pursuant to *respondeat superior*, Defendant CITY OF CHICAGO, as principal, is liable for its agents' actions.

WHEREFORE, Plaintiff demands judgment against the CITY OF CHICAGO, and such other and additional relief that this Honorable Court deems just and equitable.

## COUNT VIII
### (Indemnification Claim pursuant to 745 ILCS 10/9-102)

87. Plaintiff realleges all of the above paragraphs and counts as if fully set forth herein.

88. The acts of the individual Defendant-Officers described in the above claims were

willful and wanton, and committed in the scope of employment.

      89.     Pursuant to the Illinois Tort Immunity Act, 745 ILCS 10/9-102, Defendant CITY OF CHICAGO is liable for any judgments in this case arising from the actions of the Defendant-Officers.

      WHEREFORE, Plaintiff asks that this Honorable Court order Defendant CITY OF CHICAGO to indemnify the Defendant-Officers for any judgment entered in this case arising from their actions.

**Plaintiff demands trial by jury on all counts.**

                          Respectfully submitted,

                          /s/ Lawrence V. Jackowiak
                        *Counsel for the Plaintiff*

Lawrence V. Jackowiak
Louis J. Meyer
Daniel P. Kiss
Law Offices of Lawrence V. Jackowiak
20 North Clark Street, Suite 1700
Chicago, Illinois 60602
(312) 795-9595